223 So.2d 269

**STATE of Alabama**

v.

**WEST POINT WHOLESALE GROCERY COMPANY.**

3 Div. 329.

Supreme Court of Alabama.

May 8, 1969.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, and Herbert I. Burson, Jr., Asst. Attys. Gen., for appellant.

John W. Johnson, Jr., Lanett, for appellee.

HARWOOD, Justice.

The West Point Wholesale Grocery Company, hereinafter referred to as the company, is a Georgia Corporation with headquarters in West Point, Georgia. Its business is wholesaling groceries, hardware, paper products, and other items.

In April 1966, final assessments were entered against the company as a foreign corporation by the Alabama State Department of Revenue for a franchise tax of $281.78, permit tax (fee) of $100.00, and an admissions tax of $191.08, with interest of $18.15. These assessments were for the year 1964, and were made under the provisions of Sections 348, 339, and 345 respectively, of Title 15, Code of Alabama 1940.

The company paid the assessments under protest and within due time filed suit in the Circuit Court of Montgomery County, in Equity, for recovery of the assessment so paid.

After hearing in the Circuit Court, the Chancellor entered a decree finding that the taxes and fees above mentioned were illegal and that the taxpayer was entitled to have the same refunded.

The state thereupon filed this appeal from such decree.

The facts adduced in the hearing before the Chancellor tend to show that the company's business is wholly located in West Point, Georgia. It has no place of business in Alabama.

The company employs six salesmen who solicit orders within a 75 mile radius of West Point, Georgia. Approximately two-thirds of the company's business results from Alabama orders.

When orders are obtained they are brought to the company's place of business by the salesmen, or mailed, and if approved, are then processed. No goods are delivered on consignment.

Deliveries are ordinarily made in company trucks, usually four days a week. If a purchaser's place of business is closed at time of an attempted delivery, the goods are returned to the company's place of business. All trucks return to the company's parking lot each night. Occasionally an order will be delivered by a salesman if his route takes him near the customer's place of business sooner than a delivery truck would arrive. Loss or spoilage of goods rests upon the company.

Racks for display of school supplies, and containers for soft goods such as boxes, are furnished by the company, but these racks or boxes have no value and are not re-claimed by the company unless the retailer requests that they be hauled away.

Payments for goods received by Alabama purchasers are made either to salesmen of the company after the goods have been delivered, or are mailed to the company in West Point by the purchaser.

■ It has long been settled that a foreign corporation which has no place of business or inventory in Alabama, and no contact with this state other than soliciting agents whose orders are transmitted to the foreign corporation's out of state headquarters for acceptance or rejection, and if the orders are accepted, goods are forwarded to the Alabama purchaser either by common carrier, or vehicles of the foreign corporation, such foreign corporation is engaged in interstate commerce. Loudonville Milling Co. v. Davis et al., 251 Ala. 459, 37 So.2d 659; Family Discount Stamp Company of Georgia, etc. v. State of Alabama, 274 Ala. 322, 148 So.2d 218; J. R. Watkins Co. v. Hamilton et al., 32 Ala.App. 361, 26 So.2d 207; West Point Wholesale Grocery Co. v. City of Opelika, 38 Ala. App. 444, 87 So.2d 661, cert. den. 264 Ala. 700, 87 So.2d 667, 354 U.S. 390, 77 S.Ct. 1096, 1 L.Ed.2d 1420.

■ The Alabama Franchise Tax on foreign corporations is not constitutionally applicable to foreign corporations doing an exclusively interstate business in Alabama. State v. Plantation Pipe Line Co., 265 Ala. 69, 89 So.2d 549; State v. Anglo-Chilean Nitrate Sales Corp., 225 Ala. 141, 142 So. 2d 87, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710.

By analogy this same principle, under the same conditions, would be applicable to the Alabama admission tax (see Roberts v. Yellow Manufacturing Acceptance Corp., 315 F.2d 161), and to the Alabama permit tax (fee).

In brief, however, the state contends that:

"The Appellee is doing local business separable from its interstate business. *First*, it solicits by agent in Alabama. *Second*, it sells and sends order to foreign jurisdiction for approval. *Third*, it delivers the merchandise that has been sold in company vehicles. *Fourth*, the agents on occasions collect for the current delivery. *Fifth*, the agents collect for prior

deliveries. *Sixth*, the agents deliver on occasions. In effect, they engage in the business of collection for some time after the sale has been consummated by delivery."

■ 1. Solicitation of orders and subsequent delivery of the products ordered are not a sufficient nexus with Alabama to subject the company to the franchise, permit, and admission taxes. Family Discount Stamp Company of Georgia, etc. v. State of Alabama, 274 Ala. 322, 148 So.2d 218.

■ 2. The evidence adduced shows that no sales are consummated in Alabama, but only upon acceptance of the order in Georgia. This indicates an interstate character of the transaction. J. R. Watkins Co. v. Hamilton, 32 Ala.App. 361, 26 So.2d 207.

3. The fact that the ordered merchandise is delivered in the company trucks does not affect the interstate nature of the business done by the company. State of Alabama v. Transcontinental Gas Pipe Line Corp., 271 Ala. 329, 123 So.2d 172.

■ 4. and 5. Collection for goods delivered, whether current with delivery, or for prior deliveries, is essential to the existence of transactions in interstate commerce. Such activity does not change an interstate transaction into an intrastate transaction. Loudonville Milling Co. v. Davis et al., 251 Ala. 459, 37 So.2d 659. See also 15 Am.Jur., Commerce, Section 54, at page 700.

6. Delivery by agents of the company or occasions of goods sold under accepted orders does not destroy the operation of the Commerce Clause of the United States Constitution. Such activity is not hawking or peddling (selling and delivering within this state), which activity is not immune under the Commerce Clause from taxing provisions of this state. Family Discount Company of Georgia, etc. v. State of Alabama, 274 Ala. 322, 148 So.2d 218.

None of the above activities, individually or collectively, supply any definite link or minimum connection between Alabama and the company authorizing Alabama to impose the assessed taxes, and without such nexus the interstate character of the transactions are within the protection of the Commerce Clause of the United States Constitution. Miller Bros. Co. v. State of Maryland, 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744.

■ In brief the state has emphasized the large percentage of business done by the company in Alabama. If the operations by the company are solely in interstate commerce, the size of such operations is immaterial. State v. Plantation Pipe Line Co., 265 Ala. 69, 89 So.2d 549.

In West Point Wholesale Grocery Co. v. City of Opelika, 354 U.S. 390, 77 S.Ct. 1096, 1 L.Ed. 1420, the City of Opelika had collected a privilege tax under an ordinance levying the same from this same company. The ordinance called for the payment of a flat privilege tax to be paid by any firm engaged in the wholesale grocery business which delivered groceries at wholesale in the city from points without the city. The operations of the company then were virtually the same as those disclosed in the present proceedings. The Supreme Court of the United States held the activities of the company to be wholly interstate, and the attempted tax to have "a substantial exclusory effect on interstate commerce," and therefore impermissible.

Under the developed facts we are unable to discern any activity by the company separable from its interstate business. Those cases based on separability of intrastate business as distinguished from interstate business can have no application here. See Interstate Oil Pipe Line Co. v. Stone, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613; Southern Natural Gas Co. v. State of Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970; Bowman v. Continental Oil Co., 256 U.S. 642, 41 S.Ct. 606, 65 L.Ed. 1139.

Despite the strenuous argument of the state to the contrary, we do not consider the present case to be within the influence of the doctrines enunciated in McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, or Scripto v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660.

In *Berwind-White*, supra, the tax had been laid upon sales of goods for consumption. All contracts for the sale of the commodity in question (coal) were entered into in New York City through New York agents of the seller. In upholding the tax, the Supreme Court wrote:

"Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce *and brought to its journey's end.* Such a tax has no different effect upon interstate commerce than a tax on the 'use' of property which has just been moved in interstate commerce sustained in * * *" (Citations omitted.) (Italics ours.)

*Scripto*, supra, involved a requirement by Florida relative to the collection of sales taxes by a Georgia corporation on sales made in Florida. As stated in the state's brief:

"The court refused to allow the fact that the local Florida wholesalers and jobbers were referred to in the contract with Scripto as 'independent contractors' to change the fact that they were agents for Scripto."

The above statement itself establishes the inapplicability of Scripto to the present case. A further differentiation is deducible in that the burden of the tax was placed upon the Florida consumer, regardless of its source; and Scripto was not liable for any tax save when it failed or refused to collect it from its Florida customers.

The decree of the lower court is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.