NEW CHANCELLOR CINEMA, INC., PLAINTIFF, v. TOWN OF IRVINGTON AND THE TOWN COUNCIL OF THE TOWN OF IRVINGTON, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 26, 1979.

566

*Mr. Melvin D. Marx* for plaintiff (*Messrs. Marx* and *Gourvitz,* attorneys).

*Mr. Salvatore Muscato,* Assistant Town Attorney, for defendants (*Mr. Henry E. Rzemieniewski,* Town Attorney).

DIOS, J. D. C. (temporarily assigned). This matter is before the court on plaintiff's order to show cause, pursuant to *R.* 4:52–1, seeking a temporary restraining order prohibiting defendants from enforcing Ordinance MC2382 which restricts the hours of exhibition of "X-rated" motion pictures from 7 P.M. until midnight. Plaintiff challenges the validity of the ordinance on the basis that its First Amendment right of free expression has been impeded and that the time limitation constitutes an unreasonable exercise of Irvington's police power. *N. J. S. A.* 40:48–2.

Plaintiff operates a motion picture theater which exhibits "X-rated" films in Irvington under a license to do business, obtained as a result of an order to show cause compelling the issuance thereof. By this application plaintiff seeks to expand its hours of operation by restraining defendants from enforcing the ordinance which provides in part:

\* \* \* Every license issued under this article shall be subject to the following conditions: \* \* \* (c) Each day of the week motion picture exhibitions with "X" ratings shall be conducted only between the hours of 7:00 p.m. and midnight; \* \* \*

Defendants contend that the regulation is justified as a valid exercise of the municipality's police power and serves the purpose of protecting the morals or general welfare of its citizenry. Specifically, they argue that the time limitations set forth in the ordinance are authorized by *N. J. S. A.* 40:52–1 (f) :

The governing body may make, amend, repeal and enforce ordinances to license and regulate: \* \* \* f. Theatres, cinema and show houses, opera houses, concert halls, dance halls, pool or billiard parlors, bowling alleys, exhibition grounds, and all other places of public

amusement, circuses and traveling or other shows, plays, dances, exhibitions, concerts, theatrical performances and all street parades in connection therewith; * * *.

The general power of municipalities to adopt local regulatory legislation is inherent in the broad delegation of the police power contained in *N. J. S. A.* 40:48–2. *Inganamort v. Fort Lee*, 62 *N. J.* 521, 528 (1973); *N. J. Builders Ass'n v. East Brunswick Tp.*, 60 *N. J.* 222, 225 (1972); *Kennedy v. Newark*, 29 *N. J.* 178, 184 (1959). This power includes the right to regulate motion pictures, the medium of expression involved here. *Adams Newark Theatre Co. v. Newark*, 22 *N. J.* 472, 475–476 (1956), aff'd 354 *U. S.* 391, 77 *S. Ct.* 1395, 1 *L. Ed.* 2d 1533 (1957); *Hamar Theatres, Inc. v. Newark*, 150 *N. J. Super.* 14, 17 (App. Div. 1977).

In *Adams Newark Theatre Co. v. Newark, supra,* the New Jersey Supreme Court recognized that the presentation of motion pictures is protected by the constitutional right of free speech. *U. S. Const.*, Amend. I; *N. J. Const.* (1947), *Art.* I, *par.* 6. However, the court stated:

While this liberty is extensive and is usually ardently defended by the courts, it is by no means absolute. Inroads and restrictions are permitted under the aegis of the police power of the states which may be delegated to subordinate governmental bodies. In New Jersey, municipalities are granted such regulatory power in the interest of preservation of public morality. [22 *N. J.* at 475–476]

The First Amendment also affords protection for expression which, as in the case at bar, has been exploited for financial gain. *Virginia Pharmacy Bd. v. Citizens Consumer Council*, 425 *U. S.* 748, 96 *S. Ct.* 1817, 48 *L. Ed.* 2d 346 (1976). Commercial speech, though protected, may be subject to regulation. *Id.*, 425 *U. S.* at 770–771, 96 *S. Ct.* at 1830, 48 *L. Ed.* 2d at 363–364. Freedom of expression is a preferred right, and close judicial scrutiny is required where the possibility of an infringement of that right exists, but where material sought to be protected does not constitute pure speech, the First and Fourteenth Amendments do not

provide the same protection. See *Linmark Assocs., Inc. v. Willingboro,* 431 *U. S.* 85, 97 *S. Ct.* 1614, 52 *L. Ed.* 2d 155 (1977); *Cox v. Louisiana,* 379 *U. S.* 536, 559, 85 *S. Ct.* 453, 476, 13 *L. Ed.* 2d 471, 487 (1965); *Breard v. Alexandria,* 341 *U. S.* 622, 71 *S. Ct.* 920, 95 *L. Ed.* 1233 (1951).

*Young v. American Mini Theatres, Inc.,* 427 *U. S.* 50, 96 *S. Ct.* 2440, 49 *L. Ed.* 2d 310 (1976), involved challenges by operators of "adult" movie theaters to two Detroit zoning ordinances which restricted the operation of their establishments within fixed boundaries. The zoning ordinances were attacked as effecting a prior restraint on constitutionally protected communication and in violation of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court rejected that argument, together with the allegation that the ordinances were void for vagueness, and upheld their validity.

██ The First Amendment permits reasonable regulations of time, place and manner of protected speech, where those regulations are necessary to foster significant governmental interests. See *Cox v. Louisiana, supra,; Kovacs v. Cooper,* 336 *U. S.* 77, 69 *S. Ct.* 448, 93 *L. Ed.* 513, reh. den. 336 *U. S.* 921, 69 *S. Ct.* 638, 93 *L. Ed.* 1083 (1949); *Grayned v. Rockford,* 408 *U. S.* 104, 92 *S. Ct.* 2294, 33 *L. Ed.* 2d 222 (1972). Justice Stevens applied this principle to the situation in *Young*:

> The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances. [427 *U. S.* at 62, 96 *S. Ct.* at 2448, 49 *L. Ed.* 2d at 321]

 It is important to note that the presumption of the validity of the Irvington ordinance "has less force when a classification turns on the subject matter of expression." *Erznoznik v. Jacksonville,* 422 *U. S.* 205, 215, 95 *S. Ct.* 2268, 2275, 45 *L. Ed.* 2d 125, 134 (1975). However, it is the duty of this court to construe the ordinance so as to render it con-

stitutional if it is reasonably susceptible to such construction, particularly since little or no discretion in town officials to issue the license exists. *State v. Holland,* 132 *N. J. Super.* 17, 23 (App. Div. 1975). The time regulation contained in the ordinance is within the municipality's power, and as there is no language in the ordinance demonstrating an intent to control the content of the motion pictures, public necessity for the licensing limitation may justify its imposition, despite the fact that the exercise of First Amendment rights may incidentally be affected. *Cf. Anderson v. Sills,* 56 *N. J.* 210, 226–227 (1970). In view of defendants' interest in assuring the safety and welfare of its citizenry, the limitation is proper, permissible and considerate of the people's rights, and not constitutionally defective. See *Cox v. New Hampshire,* 312 *U. S.* 569, 61 *S. Ct.* 762, 85 *L. Ed.* 1049 (1941).

Plaintiff questions the efficacy of the governmental interests Irvington seeks to protect, but it is not the court's function to determine the wisdom of defendants' decision to limit the hours of operation of "X-rated" motion pictures. Irvington's attempt to preserve the quality of its neighborhoods and to protect the morals of its youth must be respected. See *Young, supra,* 427 *U. S.* at 72, 96 *S. Ct.* at 2453, 49 *L. Ed.* 2d at 327; *cf. Ginsberg v. New York,* 390 *U. S.* 629, 88 *S. Ct.* 1274, 20 *L. Ed.* 2d 195, reh. den. 391 *U. S.* 971, 88 *S. Ct.* 2029, 20 *L. Ed.* 2d 887 (1968); *Adams Newark Theatre Co. v. Newark, supra,* 22 *N. J.* at 478.

Defendants' concern for the citizens' well-being and the aesthetic values of the community is a valid municipal objective, but must be advanced in a manner consistent with plaintiff's equal protection rights under the Fourteenth Amendment. Those wishing to express unpopular or controversial views may not be denied a forum from which more acceptable messages are permitted to be expressed. "Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone." *Chicago Police Dep't v. Mosley,* 408 *U. S.* 92, 96, 92 *S. Ct.* 2286, 2290, 33 *L. Ed.* 2d 212, 217 (1972).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ However, the content of speech must be examined in order to determine the protection to accord it under the First Amendment. In *Young* Justice Stevens indicated that a difference in content may require different licensing requirements, particularly in the area of motion picture films depecting sexual activity.

> Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures. [427 *U. S.* at 70–71, 96 *S. Ct.* at 2452, 49 *L. Ed.* 2d at 326]

▮ Motion picture theaters which do not exhibit "X-rated" films in Irvington are not subject to a similar time regulation. Justice Powell, concurring in *Young,* took exception to that part of the court's opinion which upheld the Detroit ordinances on the grounds that the city could properly differentiate between movie theaters based on the content of films shown. In this respect Justice Stevens' opinion did not represent the majority of the members of the court. Nevertheless, Justice Powell proposed a two-pronged inquiry to ensure equal protection rights: (1) whether the ordinance imposed content limitations on the filmmakers or their ability to make the movies available to interested members of the public, and (2) whether those desiring to see the films were restricted "in any significant way" from viewing them. *Id.,* 427 *U. S.* at 78, 96 *S. Ct.* at 2456, 49 *L. Ed.* 2d at 331. Applying this test to the facts in *Young,* Justice Powell made the following pertinent statement:

> At most the impact of the ordinance on these interests is incidental and minimal. Detroit has silenced no message, has invoked no censorship, and has imposed no limitation upon those who wish to view ["adult" motion pictures]. The ordinance is addressed only to the places at which this type of expression may be presented, a restriction that does not interfere with content. Nor is there any significant curtailment of adult movie presentations, or the opportunity for a message to reach the audience. [427 *U. S.* at 78–79, 96 *S. Ct.* at 2456, 49 *L. Ed.* 2d at 331]

While the Irvington ordinance has an incidental impact upon plaintiff's constitutionally protected film exhibitions, it is no greater than that which is necessary to promote the legitimate governmental interests articulated by defendants. *Cf., United States v. O'Brien,* 391 *U. S.* 367, 377, 88 *S. Ct.* 1673, 1679, 20 *L. Ed.* 2d 672, 680 .(1968). Prospective patrons may be inconvenienced by the hour limitations, but the majority of those desiring to view the films will more likely be accommodated by the evening presentations. Irvington's interest is unrelated to the suppression of free expression, which is evidenced by the fact that Ordinance MC 2382 does not prohibit the types of films that may be shown, but merely provides for a reasonable time regulation.

Remaining before the court is the question of the propriety of plaintiff's application for a temporary restraining order. A temporary restraint is an extraordinary equitable remedy, which must be administered with sound discretion based upon considerations of justice, equity and morality. *Suenram v. Society of Valley Hosp.,* 155 *N. J. Super.* 593, 596–597 (Law Div. 1977). Preliminary injunctive relief should not be granted unless the litigant demonstrates a probability of eventual success on the claim, and that irreparable injury will be sustained if relief is not forthcoming. *Chesimard v. Mulcahy,* 570 *F.* 2d 1184, 1187 (3 Cir. 1978) ; *414 Theater Corp. v. Murphy,* 499 *F.* 2d 1155, 1159 (2 Cir. 1974).

Plaintiff has not satisfied its burden with respect to these requirements. There is nothing before this court to indicate the possibility of business harassment or a policy of overzealous enforcement by defendants which might warrant a restraining order. Further, plaintiff has failed to demonstrate probable success on the merits of its claim. The ordinance is valid as a reasonable regulation of expression on the basis of time, and is a proper exercise of the municipality's authorized powers. *N. J. S. A.* 40 :48–2 ; 40 :52–1(f). Where the right to injunctive relief is not clear as a matter of law, a preliminary

injunction should not issue. *Sneath v. Lehstein,* 120 *N. J. Eq.* 327, 333 (E. & A. 1936).

For the reasons set forth herein, plaintiff's application for a temporary restraining order is hereby denied. An appropriate order may be submitted.